UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAMSUL AHMED,

                Plaintiff,         Civil Action No. 17-10940
                                          Honorable Sean F. Cox
                                          Magistrate Judge David R. Grand

v.

SOCIAL SECURITY,
COMMISSONER OF,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 14]**

Plaintiff Shamsul Ahmed ("Ahmed") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying in part his application for Supplemental Security Income ("SSI") and Disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #12, #14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.   RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Ahmed was not disabled prior to June 11, 2015 under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment **(Doc. #14)** be **GRANTED**, Ahmed's Motion for Summary Judgment **(Doc. #12)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A. Background

Ahmed was 53 years old at the time of his alleged onset date of October 29, 2013. (Tr. 198). He completed the tenth grade and had no further education besides English language classes upon immigrating to the United States. (Tr. 54). Ahmed has prior work history as a machine operator. (Tr. 54, 175-176). He worked for fifteen years in this position until he "had [a] heart attack [], then I stopped." (Tr. 56). He alleges disability as a result of his heart condition, as well as shoulder, back, and neck pain, hypertension and diabetes. (Tr. 56, 61, 183, 200).

On November 14, 2013, Ahmed filed applications for SSI and DIB. (Tr. 104-105). These applications were denied initially on May 21, 2014. (*Id.*). Ahmed filed a timely request for an administrative hearing, which was held on December 2, 2015, before ALJ Patricia S. McKay. (Tr. 44-83). Ahmed, who was represented at the time by attorney Mark Greenman, testified at the hearing, as did vocational expert ("VE") Helen Topcik. (*Id.*). On January 26, 2016, the ALJ issued a written decision finding that Ahmed was not disabled prior to June 11, 2015, but became disabled on that date and continued to be disabled through the date of the decision under the Act. (Tr. 25-43). On February 7, 2017, the Appeals Council denied review. (Tr. 1-7). Ahmed timely filed for judicial review of the final decision on March 25, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Ahmed's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this sequential analysis, the ALJ found that Ahmed was not disabled under the Act prior to June 11, 2015, but became disabled on that date and through the date of the decision. At Step One, the ALJ found that Ahmed had not engaged in substantial gainful activity since October 29, 2013 (the alleged onset date). She also found that Ahmed meets the insured status requirements of the Act through December 31, 2018. (Tr. 31). At Step Two, she found that Ahmed has the severe impairments of: status-post myocardial infarction with coronary artery disease and subsequent multiple stent placements; history of torn rotator cuff with mild AC joint degeneration; degenerative disc disease with lumbar and cervical disc bulge and bilateral cervical radiculopathy; and right knee joint degeneration. (*Id.*). At Step Three, she found that Ahmed's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 32).

The ALJ then found that Ahmed retains the residual functional capacity ("RFC") to perform light work, with the following additional limitations: only occasional climbing of stairs, crouching, crawling, kneeling, and stooping/bending; avoid workplace hazards such as dangerous moving machinery and unprotected heights; not able to climb ropes, ladders, or scaffolds; only occasional reaching overhead with the dominant upper right extremity; and limited to work that is self-paced/unable to perform in a production-like environment. (Tr. 33).

At Step Four, the ALJ determined that Ahmed is unable to perform any of his past relevant work. (Tr. 36). The ALJ then found that on June 11, 2015, Ahmed's age category changed from "an individual closely approaching advanced age" to "an individual of advanced age." (*Id.*). At Step Five, the ALJ concluded, based in part on the VE's testimony, that prior to June 11, 2015, Ahmed was capable of performing a significant number of jobs that existed in the national economy, but beginning on June 11, 2015, because of his advanced age Ahmed was no

4

longer capable of performing any jobs that existed in significant numbers in the national economy. (Tr. 38). The ALJ thus found that Ahmed was not disabled under the Act prior to June 11, 2015, but became disabled on that date and through the date of the decision. (*Id.*).

### C.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13;

*Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

   **D.   Analysis**

In his motion, Ahmed argues that the ALJ erred in determining his RFC; particularly in the weight she gave the medical source opinion evidence. He claims that the ALJ's conclusion that he be limited to light work with additional restrictions was not supported by substantial evidence, and that "the medical evidence of record and the treating medical source statements completed by Dr. Samir and Dr. Munir demonstrate that [he] was limited to no more than sedentary work activity since October 29, 2013." (Doc. #12 at 11). The Commissioner argues that the ALJ's RFC is supported by substantial evidence, and that she properly considered and weighed the medical source opinion evidence in making her RFC determination. (Doc. #14 at 8,

19). Upon a thorough review of the ALJ's decision and the record evidence, the Court finds that the ALJ's decision is supported by substantial evidence.

### 1. The ALJ's RFC Determination is Supported by Substantial Evidence

Ahmed argues that "the medical record and treatment notes about [Ahmed's] coronary problems, back, leg, neck and arm pain fails to provide substantial evidence to support the ALJ's RFC finding of light work." (Doc. #12 at 12). Ahmed goes on to cite to portions of the record as evidence that his conditions were relatively severe. This argument fails in two respects. First, most all of the records Ahmed cites consist of his subjective reports of his condition to his physicians. (Doc. #12 at 13-14) (citing *e.g.*, Tr. 313, 520, 522, 525, 528, 530). But the ALJ was not required to credit Ahmed's self-reports, and indeed, found that although Ahmed suffered from certain symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . ." (Tr. 34).

Second, even if Ahmed's self-reports constituted "substantial evidence" in support of his claim for disability benefits this would not necessarily mean the ALJ's determination was flawed; "[a]dministrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Secretary may proceed without interference from the courts." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281–82 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir.1994)). As noted above, if the ALJ's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286; *Blakley*, 581 F.3d at 406 ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial

evidence in the record that would have supported an opposite conclusion'").

Moreover, the ALJ cited substantial evidence from the record to support her RFC determination. For example, she cited to the opinion of Dr. Gupta, the medical expert who reviewed Ahmed's records in conjunction with his disability applications. (Tr. 34, 84-103). Although she ultimately did not adopt Dr. Gupta's opinion that Ahmed was capable of performing medium exertional work, opting for a more restrictive RFC based on "evidence presented at the hearing level," the ALJ still noted that overall Dr. Gupta's opinion was supported by "ample rationale (rooted in the medical evidence)." (Tr. 34).

The ALJ also noted the consistent, generally unremarkable physical examinations Ahmed underwent between his alleged onset date in October 2013 and June 2015 when Ahmed was deemed disabled (and around which point the ALJ acknowledges Ahmed's condition began to show signs of decline). (Tr. 34-35). Specifically, the ALJ explained, "notes dated from January 2014 reveal [Ahmed] had no complaints of fatigue or tiredness; he had no shortness of breath or swelling; and he had no weakness." (Tr. 34). The ALJ also wrote that "[o]n physical exam, [Ahmed] presented in no distress; he had a normal posture and gait; he had clear lungs and normal cardiovascular functioning; he had normal musculoskeletal ranges of motion with 5/5 strength throughout . . . ." (*Id.*). These findings are supported by substantial evidence in the record. (*E.g.,* Tr. 278 ("No complaints of fatigue or tiredness. He seems to be doing a little bit better than before. Less complaints of chest discomfort. No shortness of breath or otherwise," "normal posture and gait," normal cardiovascular findings, and normal range of motion/strength); 282, 285 (recommending "continue[d] exercise at home" and follow-up in three months); 286 ("exercise functional capacity was good"); 287, 453 (normal cardiovascular findings, extremity strength); 458 ("chronic joints pain, controlled with medication"); 461 ("pain

8

medication relieves pain but after [a] few [h]our[s] pain came back.").

The ALJ also appropriately acknowledged record evidence that perhaps could have supported a more restrictive RFC. For example, she noted that Ahmed had "paraspinal spasms and tenderness" at a March 2014 examination (Tr. 34, 453), and explained that her RFC determination limiting Ahmed to exertionally light work "accounts for some reasonable musculoskeletal aches and discomfort." (Tr. 35). She also acknowledged a January 2013 right shoulder MRI noting a rotator cuff tear and a February 2014 lumbar MRI that showed "moderate disc herniation." (*Id*., Tr. 291, 474-475). Again, the ALJ emphasized that in determining Ahmed's RFC she accounted for "some reasonable pain and limitations therefrom." (Tr. 35).

Examination of the full record reflects what the ALJ summarized: although Ahmed consistently complained of some shoulder and back pain, which were supported by diagnostic testing, examinations throughout the contested period were generally normal, and showed that Ahmed's symptoms were reasonably controlled through medication. Various treating physicians encouraged treatment through exercise, physical therapy and pain relief injections. (Tr. 334, 342, 480). The physical therapy "rehab potential" was good. (Tr. 420).

In sum, all of the foregoing constitutes substantial evidence in support of the ALJ's RFC determination of light work with additional restrictions for the period in question. Accordingly, the evidence Ahmed cited in his motion that might support a different conclusion does not merit disturbing her findings. *See White,* 572 F.3d at 281–82.

### 2. The ALJ Properly Considered the Medical Source Opinions

The ALJ also properly weighed the medical source opinions in reaching her decision. Ahmed challenges the weight given by the ALJ to the opinions of Ahmed's primary physician Dr. Samir, and his cardiologist Dr. Munir. (Doc. #12 at 18-19). The ALJ gave both Dr. Samir's

9

and Dr. Munir's RFC statements, dated October 22, 2015 and October 23, 2015, respectively, "little weight," indicating that they "cite symptoms and limitations that have only recently become apparent in the medical evidence and thus [provide] little [] insight into [Ahmed's] longitudinal (i.e. relevant) residual functional capacity."  (Tr. 36).

As part of his argument, Ahmed references two letters received from Dr. Samir and Dr. Munir that he submitted to the Appeals Council in February, 2016.  In these letters, the doctors assert that they intended the limitations in their respective RFC forms to extend back to 2013. (Tr. 569, 570).  However, Ahmed makes no argument for remand under "sentence six" of the Act.  *See* 42 U.S.C. § 405(g).  A "sentence six" remand to consider additional evidence is appropriate when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding.  *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).  It is the plaintiff's burden to show that the new evidence meets these requirements.  *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988)).  Ahmed offers no argument whatsoever that he is entitled to a sentence six remand, let alone explains why he meets "new and material evidence" and "good cause" requirements for such relief.  The law is clear that other than with respect to a possible sentence six remand, this Court may not consider new evidence submitted to the Appeals Council after the ALJ made her decision.  *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[T]his court has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review.").

Without considering the letters submitted to the Appeals Council, the Court will consider Ahmed's challenge to the weight the ALJ ascribed to each doctor's opinion.  Courts have

recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). If the ALJ declines to give a treating physician's opinion controlling weight, she must document how much weight she gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)); *see also DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 728 (6th Cir. 2014) ("[t]he lines of demarcation [as to what constitutes good reasons] are not clear, and in the vast majority of cases, a position defending a final administrative decision despite its imperfections will be justified.").

### a. Dr. Samir's RFC Opinion

Ahmed's primary care physician, Dr. Samir, filled out a "RFC Medical Questionnaire" on October 22, 2015. (Tr. 497-498). He opined that Ahmed could not lift more than five pounds, could stand for "less than an hour," could not walk for longer than ten minutes, and that

11

he was "unable to maintain the same posture for more than a few minutes at a time". (*Id*.).

These restrictions are more limiting than the restrictions indicated by the ALJ's RFC determination of "light work," which limits a claimant to "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . [and] requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Ahmed argues that because Dr. Samir's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and [] is not inconsistent with the other substantial evidence of record" the ALJ was required to give it controlling weight. (Doc. #12 at 19) (citing 20 C.F.R. § 404.1527(d)(2); *Wilson*, 378 F.3d at 544; *Hensley v Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)). However, the Court agrees with the Commissioner's argument that "the ALJ gave a sufficiently 'good reason' for giving little weight" to Dr. Samir's opinion. (Doc. #14 at 25).

The ALJ explained that she gave Dr. Samir's October 2015 RFC "little weight" with respect to the time period in question – October 29, 2013 to June 11, 2015 – because it was "dated from October 2015 and [] cites symptoms and limitations that have only recently become apparent in the medical evidence . . ." (Tr. 36). Similarly, the ALJ noted that the record showed Ahmed's condition began to deteriorate around June 2015. (*Id.*). These factors, combined with the ALJ's above-described analysis of the record evidence from the relevant time period, led her to conclude that Dr. Samir's RFC was not reflective of Ahmed's abilities prior to mid-2015. Moreover, as the Commissioner points out, a review of Dr. Samir's treatment records reveal "nothing from [his] objective findings on physical examination that would support the severe limitations in [his] RFC assessment, particularly none that would support disabling limitations back to October of 2013." (Doc. #14 at 23; Tr. 499-535).

For one, it does not appear Dr. Samir began to treat Ahmed until December 16, 2014.

(Tr. 530). Although Ahmed points out that he was treated by Dr. Samir's predecessor, Dr. Uddin, at the same clinic, Dr. Uddin's records also contain few objective findings that would support Dr. Samir's October 2015 RFC. (Tr. 287-332, 453-470.) As discussed above, Dr. Uddin and Dr. Samir's records from this earlier relevant period document numerous subjective complaints by Ahmed of neck, shoulder and back pain. Ahmed was prescribed pain medications (Tr. 287, 303) and received injections. (Tr. 324-325, 331-332). But there is little objective medical evidence supporting Dr. Samir's restrictive RFC. Most notably, a February 14, 2014 MRI of the lumbar spine reflected mostly unremarkable findings while acknowledging "a small . . . disc herniation mildly effacing the ventral thecal sac." (Tr. 291). A January 26, 2013 shoulder MRI (which was performed well before Ahmed's alleged onset date) reflected a "[f]ull thickness tear of the anterior supraspinatus tendon insertion[,] [m]ild partial tearing of the subscapularis[,] [u]nderlying rotator cuff tendinosis[,] and [mild] to moderate AC joint Arthropathy. (Tr. 326-327). The ALJ's decision reflects she reviewed those records, found them not to fully support Dr. Samir's 2015 RFC opinion, and accounted for them in her own RFC determination. (Tr. 35). While the ALJ could have perhaps elaborated on her reasons for giving Dr. Samir's RFC "little weight," the foregoing shows that she did articulate a good reason for doing so, and her reasoning is supported by substantial evidence.

### b. Dr. Munir's RFC Opinion

Ahmed's cardiologist, Dr. Munir, also filled out a "RFC Medical Questionnaire" on October 23, 2015. (Tr. 536-537). He opined that Ahmed could not lift more than five pounds due to his "shoulder pain," could not stand for longer than "around an hour," could not walk for longer than ten minutes, and required unscheduled breaks to lie down during the day due to fatigue. (*Id.*). Again, Ahmed argues this opinion is entitled to controlling weight, and the

Commissioner argues that the ALJ's decision to give Dr. Munir's RFC opinion little weight is adequately explained and supported by substantial evidence.

Like Dr. Samir's RFC, Dr. Munir's RFC does not indicate how long the October 2015 limitations were allegedly in place, and the ALJ explains she found Dr. Munir's opinion inconsistent with his own past treatment records, entitling his RFC opinion to "little weight." (Tr. 36). Indeed, the ALJ discussed Ahmed's treatment record with Dr. Munir in detail, and from this discussion it is clear she considered the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship," and the "consistency of the opinion with the record as a whole." *Wilson*, 378 F.3d at 544. Specifically, she noted the inconsistency between the October 2015 RFC and the treatment records from late 2013 through early 2015. (Tr. 34-35). For instance, she noted that although Ahmed had an "October 2013 myocardial infarction with resulting stent placement, notes dated from January 2014 reveal [Ahmed] had no complaints of fatigue or tiredness; he had no shortness of breath or swelling; and he had no weakness." (Tr. 34, 277, 278). She also noted that while Ahmed complained of chest pains on February 11, 2014, Dr. Munir found them to be musculoskeletal pains and noncardiac. (Tr. 34, 281-282). In February 2014, and again in November 2014, "Exercise Myocardial Perfusion Imaging" was performed during exercise stress tests, and the results were "normal" or only "mildly abnormal"; Ahmed's "exercise functional capacity was good." (Tr. 34, 286, 566). In sum, the ALJ documented the weight she gave Dr. Munir's October 2015 RFC, and adequately explained her reasons for that weight.

### 3. Plaintiff's Argument about His Use of a Treadmill Does Not Merit Remand

In her decision, the ALJ wrote that Ahmed "testified that he exercises and takes medication for his heart condition . . . [and] that he goes to a local gym five days per week and

14

walks on a treadmill for 45 minutes to an hour." In his reply brief, Ahmed challenges the ALJ's characterization of this aspect of his testimony, and the Commissioner's reliance on it in her motion/response brief. (Doc. #15 at 1-2). However, even assuming Ahmed's interpretation of the testimony is correct, this issue does not merit remand.

At the hearing, the ALJ asked Ahmed, "Tell me what you're doing for your heart?" and Ahmed answered, ". . . I do exercise . . . for heart, for treadmill." (Tr. 59). The ALJ then asked whether he used the treadmill at home or at a gym, to which Ahmed answered, "I go to gym . . . I go Monday through Friday." (*Id.*). He was then asked, "How much time do you spend on your treadmill," and Ahmed answered, somewhat ambiguously, "Go one hour for 12 minutes." (Tr. 60). Ahmed agreed that this was something his doctors recommended for him to treat his heart condition. (*Id.*). The dispute arises because later during his testimony, Ahmed seemed to clarify that when using the treadmill, he would walk for ten minutes at a time, take a short break, and then continue walking again. (Tr. 61). This testimony, even if credited, does not warrant remand.

First, Ahmed did not indicate during his testimony how long he had been using the treadmill in the manner he described, and the ALJ found him disabled after June 11, 2015. Thus, it is not even clear that there is a contradiction between Ahmed's testimony and the ALJ's disability determination. Second, even going to the gym daily and using a treadmill for an hour or more with breaks during that time is not necessarily consistent with someone who is disabled. Finally, although Ahmed points to one record – from a December 30, 2014[1] visit to Dr. Munir in which Ahmed stated he had difficulty walking due to shortness of breath – a cardiovascular exam performed by Dr. Munir on that date yielded "normal" findings. (Doc. #15 at 2; Tr. 552-

---

[1] Ahmed incorrectly states this record is from June 2014. (Doc. #15 at 2).

15

53). Particularly coupled with the evidence discussed above from the relevant period in which Ahmed did not complain of fatigue or shortness of breath or of an inability to exercise, *see supra* at 8, the foregoing establishes that remand on this issue is not warranted.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #14)** be **GRANTED**, Ahmed's Motion for Summary Judgment **(Doc. #12)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

Dated: February 21, 2018        s/David R. Grand
Ann Arbor, Michigan              DAVID R. GRAND
                                 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th

Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 21, 2018.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
